**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

SOUTHWIND LAKES APARTMENTS,

    Appellant,

v.

                                   Case No. 2:26-cv-2244-MSN-atc
                                   Case No. 2:26-cv-2807-MSN-atc

JAMTARSHA L. SANDERS,

    Appellee.

---

**ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT AND
DENYING AS MOOT APPELLANT'S EMERGENCY MOTION TO STAY
ENFORCEMENT OF ORDERS GRANTING MOTION FOR SANCTIONS**

---

Appellant Southwind Lakes Apartments ("Southwind") appeals from orders of the

bankruptcy court imposing sanctions against it and compelling payment of the sanctions amount.

For the reasons set forth below, the decision of the bankruptcy court is **AFFIRMED**. Appellant's

Emergency Motion to Stay Enforcement of Orders Granting Motion for Sanctions (ECF No. 12)

is **DENIED AS MOOT**.

## BACKGROUND

The facts in this matter are largely undisputed. In June 2025, Appellee Jamtarsha L.

Sanders ("Sanders") entered into a lease agreement with Appellant Southwind Lakes Apartments

("Southwind") for an apartment located at 4562 Nevis Dr #203, Memphis, Tennessee 38125

("Premises"). Under the terms of the lease agreement, Sanders agreed to pay monthly rent on or

before the first day of each month. But after losing her job, Sanders fell behind on rent. After

Sanders failed to timely pay rent for October, Southwind filed a Forcible Entry and Detainer

Warrant ("FED") on October 16, 2025, in Shelby County General Sessions Court, seeking unpaid rent and possession of the Premises.

A few weeks later, on November 5, 2025, Sanders filed a *pro se* Chapter 7 bankruptcy petition. Sanders listed Southwind on Schedule G of her bankruptcy petition and in her attached creditor matrix. That same day, Sanders emailed Southwind at propsouthwindslake@precisionmngmt.com, notifying them of her bankruptcy filing, including the case number and trustee. Sanders also called the property manager two days later, on November 7, 2025, informing her of the bankruptcy petition and her November 5 email and inquiring whether she could pay October's past-due rent at that time. Also on November 7, the Bankruptcy Noticing Center sent notice of Sanders' bankruptcy filing via first class mail to Southwind at 8210 Storr Drive, Memphis, TN 38125.[1]

Meanwhile, the FED filed by Southwind had not yet been processed by the Shelby County General Sessions Court. It was not until Monday, December 1, 2025, that the FED was issued to the Southwind's selected private process server, Tri-State Processing ("Tri-State"). Tri-State posted the FED on the door to the Premises on Friday, December 5, 2025, and Sanders found it upon returning home later that day.

The following Monday, December 8, 2025, Sanders contacted Southwind's counsel, notifying them of her bankruptcy filing. Counsel's legal assistant responded, informing Sanders that the case would be dropped due to the bankruptcy filing and that she did not have to appear at the initial appearance, which had been set for Thursday, December 11, 2025. The legal assistant

---

[1] Southwind's appeal brief acknowledges that "bankruptcy papers were mailed to Southwind," (ECF No. 7 at PageID 23–24), and the address to which the notice was sent by the Bankruptcy Noticing Center is the address on Southwind's website, *see infra* pp. 11–12 & nn. 5-7.

also advised Sanders that the pre-petition rent for October and November would be discharged in the bankruptcy, so Sanders did not need to pay those amounts.

On December 9, 2025, Sanders filed her Motion for Sanctions for Violating Automatic Stay (Bankr. Case No. 25-25681, ECF No. 12, "Motion for Sanctions.")  The Motion for Sanctions alleged that Sanders had made the property manager aware of her bankruptcy petition via email on November 5, 2025, and via a phone call on November 7, 2025.  (*Id.*)  Sanders attached a copy of her November 5, 2025, email to the Motion for Sanctions.  (*Id.*)

In its written response to Sanders' Motion for Sanctions, Southwind did not assert that it did not know about Sanders' bankruptcy filing.  (Bankr. Case No. 25-25681, ECF No. 13.)  It did not dispute that it had received notice via Sanders' email to the property manager on November 5, 2025, or via her phone call to the property manager on November 7, 2025.  (*Id.*)  And it did not dispute that it had received the notice from the Bankruptcy Noticing Center sent first class mail on November 7, 2025.  (*Id.*)  Instead, it argued only that it had not violated the automatic stay because the FED had been filed on October 16, 2025—before Sanders filed her bankruptcy petition—and it was the delay by the General Sessions Court in processing the FED that caused it to be served after the automatic stay was in effect.  (*Id.*)

Similarly, at the hearing on Sanders' Motion for Sanctions, Southwind did not dispute that it had notice of Sanders' bankruptcy filing, only that the FED had been filed prior to the automatic stay, and the General Sessions Court's processing delay was to blame for what Southwind alleged was a misunderstanding.  (*Id.*, ECF No. 56.)

At the hearing on the Motion for Sanctions, the bankruptcy judge also noted that communications between Southwind's counsel's legal assistant and Sanders regarding the pre-petition rent were troubling:

3

> When I look at the motion for relief and then I look at the attachments, I'm just going to interrupt everyone out of the gate here. So, when I looked at the attachments and the email exchange between the pro se debtor and counsel's legal assistant, it gives me great pause that she is saying don't pay the pre-petition rent because that's not a thing in a Chapter 7 case.
>
> If she wants to assume the lease, she must cure the lease, and she has now been told by somebody that she doesn't have to pay that and that it will be discharged. And so that's misleading, but it may be misleading because the landlord wanted to just continue to evict, and so then she wouldn't have been able to cure the lease. And so I take great issue with that. That's probably my biggest issue that I take with the communication that's attached.

(*Id.*, ECF No. 56 at Page 8; *Id.*, ECF No. 20 at Page 9–13.)[2]  Counsel said that he understood the Court's concern and told the Court that if Sanders wanted to assume the lease, Southwind could make accommodations for that if needed.  (*Id.,* ECF No. 56 at Page 11.)  At the end of the hearing, the bankruptcy judge took the Motion for Sanctions under advisement.

On February 12, 2026, the bankruptcy judge entered her Opinion and Order Granting Sanders' Motion for Sanctions.  (*Id.*, ECF No. 29.)  The bankruptcy judge found that Southwind had actual knowledge of Sanders' bankruptcy filing via (1) the notice from the Bankruptcy Noticing Center sent on November 7, 2025, (2) Sanders' November 5, 2025, email to the property manager, and (3) Sanders' November 7, 2025, follow-up phone call with the property manager. (*Id.*)  The bankruptcy judge also noted that Southwind's argument that it had no ability to stop service of the FED was without merit because it had used a private process server and had a duty to contact the process server to stop all continued actions against Sanders.  (*Id.*)  The order concluded that Southwind had willfully violated the automatic stay by failing to stop prosecution of the pending FED, and that Southwind's actions were undertaken in reckless disregard of the law.  (*Id.*)  The bankruptcy judge therefore found that sanctions for actual and punitive damages

---

[2] Southwind's brief in support of its appeal acknowledges that the legal assistant's statement was incorrect.  (*See* ECF No. 7 at PageID 27.)

were appropriate and set a separate hearing to determine the amount of damages. (*Id.*) Following that hearing, the bankruptcy judge entered an order awarding Sanders $733 in actual damages and $3,665 in punitive damages. (*Id.*, ECF No. 35.)

Southwind appealed to this Court on March 9, 2026, challenging the finding that it willfully violated the automatic stay and that punitive damages were appropriate because it had acted in reckless disregard for the law. (ECF Nos. 2 & 7.) Specifically, Southwind argues that neither it nor its counsel had knowledge of Sanders' bankruptcy filing until she contacted counsel's office on December 8, 2025. (ECF No. 7 at PageID 25–26.) Southwind argues that it never received Sanders' November 5 email to the property manager because Sanders sent it to an incorrect email address and misspelled the property name in the email address. (*Id.* at 24–25.) Southwind also asserts that the bankruptcy judge improperly shifted the burden of proof regarding notice to Southwind, saying that there was no proof that Southwind received the mailed notice from the Bankruptcy Noticing Center or the email from Sanders. (*Id.* at PageID 29.)

**<u>JURISDICTION AND STANDARD OF REVIEW</u>**

District courts have jurisdiction to review final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C.§ 158(a). The bankruptcy court's legal conclusions are reviewed *de novo* and its factual findings for clear error. *In re O'Hara*, 167 F.4th 358, 370 (6th Cir. 2026); *In re Reinhardt*, 177 F.4th 684, 694 (6th Cir. 2026); *see Nicole Gas Prod., Ltd.*, 916 F.3d 566, 573 (6th Cir. 2019).

*De novo* review requires the district court to make an independent determination of the law. *In re Thompson*, 668 B.R. 156, 167 (BAP 6th Cir. 2025); *In re Tucker*, No. 25-8010, 2026 WL 861677, at *2 (BAP 6th Cir. Mar. 30, 2026). On the other hand, "clear-error review is highly deferential." *Taglieri v. Monasky*, 907 F.3d 404, 408 (6th Cir. 2018) (citation modified). On clear

error review, the district court will not disturb the bankruptcy court's factual findings unless it is "left with the definite and firm conviction that a mistake has been committed." *Id.* (citation modified); *In re Perkins*, 581 B.R. 822, 827 (BAP 6th Cir. 2018) (quoting *United States v. Ray*, 803 F.3d 244, 265 (6th Cir. 2015)). Or, to put it more colorfully, "to be clearly erroneous, the decision must be dead wrong," "striking [the reviewing court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *United States v. Branham*, 460 F. App'x 538, 543 n.3 (6th Cir. 2012) (citing *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)) (citation modified). "When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Perkins*, 581 B.R. at 827 (quoting A*nderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

A bankruptcy court's award of actual and punitive damages for willful violations of the automatic stay is reviewed for an abuse of discretion. *In re Dougherty-Kelsay*, 636 B.R. 889, 897 (B.A.P. 6th Cir. 2022); *see Nicole Gas Prod., Ltd.*, 916 F.3d at 573 ("Generally, bankruptcy court determinations of contempt are examined under an abuse of discretion standard." (citing *In re Wingerter*, 594 F.3d 931, 936 (6th Cir. 2010))); *see In re Addleman*, No. 17-16032, 2018 WL 5797709, at *10 (Bankr. N.D. Ohio Nov. 2, 2018) (describing an award of punitive damages as "within the bankruptcy court's discretion"); *In re Bozman*, No. 2:05-59775, 2007 WL 4246279, at *2 (S.D. Ohio Nov. 28, 2007) ("Discretionary decisions are tested for an abuse of discretion." (citations omitted))). The bankruptcy court abuses its discretion only when "it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *In re Baer*, No. 11-8062, 2012 WL 2368698, at *2 (B.A.P. 6th Cir. June 22, 2012) (citations omitted). The "reviewing court will find an abuse of discretion when it has a definite and firm conviction that the trial court committed a clear error of judgment." *In re Bozman*, 2007

WL 4246279, at *2 (citation modified).  "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion."  *In re Baer*, 2012 WL 2368698, at *2 (citation modified).

## **DISCUSSION**

The filing of a bankruptcy petition gives rise to the automatic stay pursuant to 11 U.S.C. § 362(a).  In a Chapter 7 case, the stay remains in effect until the time that a discharge is granted or denied.  *Id.* § 362(c)(2).  Section 362(k) creates a cause of action for an individual injured by a violation of the automatic stay.  Under that section, the individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  To recover damages under § 362(k), a plaintiff must show by a preponderance of the evidence that (1) the defendant violated the stay imposed by § 362(a); (2) the violation was willful; and (3) the plaintiff was injured by the violation.  *In re Paige*, No. 2:24-BK-53659, -- B.R. --, 2026 WL 493391, at *3 (Bankr. S.D. Ohio Feb. 19, 2026) (citations omitted); *In re Smith*, 636 B.R. 521, 531 (Bankr. E.D. Tenn. 2021); *In re Gomez*, No. 13-32210, 2015 WL 4638477, at *3 (Bankr. N.D. Ohio Aug. 3, 2015).  Whether there has been a willful violation of the automatic stay "is a mixed question of law and fact."  *In re Connor*, 641 B.R. 875, 882 (Bankr. M.D. Tenn. 2022) (citations omitted).

Southwind's appeal challenges the bankruptcy court's conclusions that (1) Southwind violated the automatic stay; (2) the violation was willful, and (3) Southwind's conduct was in reckless disregard of the law and punitive damages were appropriate.[3]

---

[3] Southwind's brief in this appeal lists seven issues for appeal, but it discusses only three. (*See* ECF No. 7.)  The fifth issue listed, "Whether the trial court erred in awarding Debtor actual damages in the amount of $733.00 against Southwind Lakes Apartments," implies Southwind is

1.     <u>**Did Southwind violate the automatic stay imposed by § 362(a)?**</u>

The filing of a Chapter 7 bankruptcy petition operates as an automatic stay of, among other things, "the commencement <u>*or continuation, including the issuance or employment of process*</u>, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case."   11 U.S.C. § 362(a)(1) (emphasis added); *see In re Dougherty-Kelsay*, 636 B.R. at 897.

To avoid violating the automatic stay, a creditor is required to refrain from certain activity and, in some circumstances, to take affirmative action.  *E.g., In re Connor*, 641 B.R. at 883–84 (citations omitted); *In re Webb*, 472 B.R. 665 (Table), 2012 WL 2329051, *15 (BAP 6th Cir. 2012) ("[I]f a creditor has an affirmative duty to halt a pending state court action, failure to do so can result in a willful violation of the stay.").   In other words, creditors must "take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition,  . . . and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition."  *In re Connor*, 641 B.R. at 883–84 (quoting *In re Wohleber*, 596 B.R. 554, 572 (BAP 6th Cir. 2019)).

Southwind's continuation of the FED after Sanders filed her bankruptcy petition, including service of the FED by posting it on the door of the Premises, violated the automatic stay under § 362(a).

---

seeking review of the bankruptcy court's determination of the amount of actual damages. But in its discussion of that issue, Southwind merely reiterates its contention it did not receive notice of Sanders' bankruptcy petition prior to her reaching out to counsel on December 8, 2025.  Southwind makes no arguments about whether Sanders was injured or the appropriate amount of compensation for her injuries.

**2.      Was Southwind's violation of § 362(a) willful?**

"A willful violation does not require proof of a specific intent to violate the stay." *In re Paige*, 2026 WL 493391, at *3. Instead, "[t]he willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing," rather than "a specific intent to violate a court order." *In re Smith*, 636 B.R. at 531–32 (citations omitted). For that reason, "a party's subjective, good faith belief that [it] had a right to engage in the violating conduct is irrelevant." *Id.* at 532 (citations omitted).

"When a creditor has actual notice of the bankruptcy case, any intentional act or omission that violates the automatic stay is willful." *Id.* (citations omitted). Having "knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay." *In re Paige*, 2026 WL 493391, at *3 (citation omitted). And a debtor's notice of bankruptcy "does not need to be formal, so long as the facts would cause a reasonably prudent person to make additional inquiry." *In re Roberson*, No. 16-11784, 2016 WL 6783301, at *6 (Bankr. N.D. Ohio Nov. 10, 2016) (citation modified). In addition, it is the creditor's responsibility to promptly forward to the correct person or department any bankruptcy notices received by incorrect internal departments or personnel. *See id.* (citations omitted).

The bankruptcy court found that Southwind had knowledge of Sanders' bankruptcy filing because it received notice from (1) the Bankruptcy Noticing Center, which sent notice via first class mail on November 7, 2025, (2) Sanders' November 5, 2025, email, and (3) Sanders' November 7, 2025, phone call with the property manager. These findings were not clearly erroneous, nor did the bankruptcy court impermissibly shift the burden of proof to Southwind.

First, the Bankruptcy Noticing Center filed a Certificate of Notice in which it was declared, under penalty of perjury, that notice of Sanders' bankruptcy filing was sent to Southwind at 8210

9

Storr Drive, Memphis, TN 38125.  (Bankr. Case No. 25-25681, ECF No. 8.)  Pursuant to Fed. R. Bankr. P. 9006(e), "service by mail of process, any other document, or notice is complete on mailing."  And, under the common law mailbox rule, the mailing of properly addressed mail raises a rebuttable presumption that it was received by the addressee in the usual time.  *E.g.*, *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 430 (6th Cir. 2007); *Tillman v. Macy's, Inc.*, 735 F.3d 453, 458 n.1 (6th Cir. 2013) ("Properly addressed and posted mail is presumed to have been delivered and received by the person to whom it was addressed." (citation modified)); *In re Cassidy*, 273 B.R. 531, 536 (Bankr. N.D. Ohio 2002) ("It is generally assumed that a document sent through the mail is received unless there is evidence to the contrary." (citations omitted)).  Based on the certification from the Bankruptcy Noticing Center, there was a rebuttable presumption that Southwind received the notice sent to it via first class mail.  Southwind presented no evidence and made no arguments to rebut that presumption.

Second, Sanders attached to her Motion for Sanctions a copy of the November 5, 2025, email that she sent to the property manager.  Southwind has not disputed the authenticity of that email.  Nor did Southwind dispute receipt of the email in its response to Sanders' Motion for Sanctions.  (Bankr. Case No. 25-25681, ECF No. 13.)  Instead, Southwind first denied receipt of Sanders' email in its brief filed in support of its appeal before this Court.[4]  In its brief, Southwind argues that the correct email addresses for its property management are mgr.southwind@precisionmngmt.com and asst.southwind@precisionmngmt.com. (ECF No. 7 at PageID 25.)  And it alleges that, even if the email address propsouthwindlakes@precisionmngmt.com was correct, Sanders mistakenly included an "s" after

---

[4] Southwind made this argument before the bankruptcy court for the first time in its Motion to Stay Enforcement of Order Granting Motion for Sanctions, which was filed April 28, 2026. (Bankr. Case No. 25-25681, ECF No. 82.)

"Southwind" in that email address as follows: propsouthwind**s**lakes@precisionmngmt.com.
However, the Court takes judicial notice[5] that the allegedly incorrect email address—with the "s"
after "southwind"—is the only email address on Southwind's website, and it appears *twice*.  First,
under "Ready to Make Southwinds Lakes Your Home?"  as shown below[6]:





_____

[5] *See* Fed. R. Evid. 201(b); *Koenig v. USA Hockey, Inc.*, No. 2:09-CV-1097, 2010 WL
4783042, at *3 (S.D. Ohio June 14, 2010) (collecting cases showing the type of information on
websites of which courts have taken judicial notice); *Jeandron v. Bd. of Regents of Univ. Sys. of
Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information
publicly announced on a party's web site, so long as the web site's authenticity is not in dispute
and 'it is capable of accurate and ready determination.'") (quoting Fed. R. Evid. 201(b)).

[6] The second image merely enlarges the email address shown in the first image; in the
second image, the Court has circled in red the allegedly erroneous "s" in the email address, which
the Court has also done for the third image shown for "Contract Information."

Southwinds[7] Lakes, *Ready to Make Southwinds Lakes Your Home?*, https://southwindlakestn.com/ [https://perma.cc/3UFM-VQKU].   And again under "Contact Information":

**Contact Information**

(833) 763 - 9162

propsouthwindslakes@precisionmngmt.com

8210 Storr Drive
Memphis, TN 38125

Southwinds Lakes, *Contact Information*, https://southwindlakestn.com/  [https://perma.cc/3UFM-VQKU].

Based on the record, the Court is not "left with the definite and firm conviction," *Taglieri*, 907 F.3d at 408, that the bankruptcy court erred in finding Southwind had notice of Sanders' bankruptcy petition via Sanders' November 5, 2025, email.  The bankruptcy court's finding that Southwind had notice via Sanders' email is not clearly erroneous.

Third and finally, Sanders alleged in her Motion for Sanctions that she had made the property manager aware of her bankruptcy filing via a phone call on November 7, 2025.  (Bankr.

---

[7] Although the website address does not contain an "s," as of the date of this Order, the property is referred to as "Southwind**s** Lakes" throughout the website, including in the title displayed on its opening page, which the Court has circled in red in the image below:



Case No. 25-25681, ECF No. 12 at Page 1.)  And Sanders reiterated this assertion at the hearing before the bankruptcy judge on the Motion for Sanctions.  (*Id.*, ECF No. 56 at Page 15.)  The bankruptcy judge credited these factual allegations.  Southwind has made no arguments that give this Court a basis to conclude that the bankruptcy judge erred in crediting Sanders' allegations.

Each of the three notices Southwind received was sufficient—standing alone—to give Southwind actual knowledge of Sanders' bankruptcy filing.  It is irrelevant that notice was not directed to Southwind's counsel or that notice may have been mailed to Southwind without specifying a particular individual or department.  It was incumbent on Southwind to promptly forward notice to its counsel or the correct internal person or department.[8]  Southwind had nearly four weeks to do that, yet it failed to do so.

And because Southwind had knowledge of Sanders' bankruptcy filing, any intentional act or omission that violated the automatic stay is deemed willful.  *In re Smith*, 636 B.R. at 532 (citations omitted).  On this point, Southwind argued it could not have filed anything with the General Sessions Court to stop the FED from being processed.  Southwind, however, could have contacted Tri-State and directed it not to serve the FED once it was received from the General Sessions Court.  Southwind's failure to do this, or to otherwise stop or prevent service of the FED,

---

[8] Again, Southwind's appeal brief admits that bankruptcy papers were mailed to it, yet it continues to argue that notice was not sent to its counsel.  (ECF No. 7 at PageID 23–24.)  But, as the bankruptcy court explained, there was no finding that Southwind's counsel or counsel's law firm willfully violated the automatic stay—only Southwind.  If Southwind's counsel had been given notice, counsel's actual knowledge could have been imputed to Southwind.  *See In re Sedlacek*, 325 B.R. 202, 214 (Bankr. E.D. Tenn. 2005) (noting that in Tennessee, "clients are charged with the knowledge of their attorneys under an agency theory" and collecting cases); *In re DRTMG, LLC*, 667 B.R. 862, 877 (Bankr. S.D. Ohio 2025) ("[W]hen a party is represented by counsel, knowledge of counsel is deemed to be the knowledge of the party as a matter of law." (citations omitted)).  But the inverse is not true; counsel's *lack* of actual knowledge does not nullify Southwind's actual knowledge.

13

was an intentional act or omission.  And because Southwind had actual knowledge of Sanders'

bankruptcy filing, Southwind's violation of the automatic stay was willful.

**3.      Did the bankruptcy court abuse its discretion when it awarded punitive damages?**

For willful violations of the automatic stay, § 362(k) authorizes the bankruptcy court to

award punitive damages "in appropriate circumstances."  11 U.S.C. § 362(k)(1).  The bankruptcy

code does not define "appropriate circumstances," but courts have generally found an award of

punitive damages appropriate for conduct that is "egregious, vindictive, or intentionally

malicious."  *In re Paige*, 2026 WL 493391, at *4 (citation omitted); *In re M.T.G., Inc.*, 646 B.R. 1,

175–76 (Bankr. E.D. Mich. 2022), *aff'd*, No. 2:22-CV-12661-TBG-DRG, 2024 WL 5695966 (E.D.

Mich. Sept. 30, 2024), *aff'd*, 164 F.4th 564 (6th Cir. 2026) (citation omitted).  However, "a high

level of culpable intent is not necessarily a pre-requisite to an award of punitive damages."  *In re*

*Witham*, 579 B.R. 787, 795 (Bankr. E.D. Ky. 2017); *see In re Paige*, 2026 WL 493391, at *4

(citation omitted); *In re Bivens*, 324 B.R. 39, 42–43 (Bankr. N.D. Ohio 2004).  Punitive damages

may therefore be awarded where the "creditor acted in bad faith or otherwise undertook its actions

in reckless disregard of the law."  *In re Paige*, 2026 WL 493391, at *4 (citation omitted); *In re*

*Witham*, 579 B.R. at 795 (citation omitted).  Finally, because the primary purpose of punitive

damages is to deter future violations, the bankruptcy court may award punitive damages if actual

damages would be an insufficient deterrent.  *E.g.*, *In re McCarthy*, No. 20-8027, 2021 WL

2456942, at *4 (B.A.P. 6th Cir. June 16, 2021) (citing *Archer v. Macomb Cnty. Bank*, 853 F.2d 497,

500 (6th Cir. 1988)); *In re Addleman*, 2018 WL 5797709, at *10 (citing *Archer,* 853 F.2d at 500);

*In re Docherty*, No. 15-14124, 2016 WL 675835, at *11 (Bankr. N.D. Ohio Feb. 18, 2016) (citing

*Archer,* 853 F.2d at 500).

The bankruptcy court did not abuse its discretion when it awarded punitive damages against

Southwind.   Despite receiving multiple notices of Sanders' bankruptcy filing, Southwind

14

apparently did nothing to ensure that it did not violate the automatic stay. This may not have been overtly malicious; it may have been due to a failure to employ adequate processes or provide appropriate training to ensure that bankruptcy notices reach the correct individuals or departments. But even if not overtly malicious, excusing such conduct would frustrate the purposes of the automatic stay. Again, Southwind was provided notice of Sanders' bankruptcy three times by differing methods. And yet, Southwind still failed to act for approximately 28 days between its receipt of notice and service of the FED. A reasonable person could agree that Southwind's failure to act was in reckless disregard of the law, so the bankruptcy court's imposition of punitive damages was not an abuse of discretion.

## CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is **AFFIRMED**. Appellant's Emergency Motion to Stay Enforcement of Orders Granting Motion for Sanctions (ECF No. 12) is **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 20th day of July, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

15